## CIRCUIT COURT OF FAIRFAX COUNTY

Scott A. Surovell

    v.

Virginia Department
of Corrections

March 1, 2016

Case No. CL-2014-10090

By Judge Randy I. Bellows

The matter is before the Court on remand from the Supreme Court of Virginia. *See Virginia Dept. of Corrections v. Scott A. Surovell,* 290 Va. 255, 776 S.E.2d 579 (2015). At issue are eight documents which the Virginia Department of Corrections ("VDOC") seeks to withhold from production under the Virginia Freedom of Information Act ("VFOIA"). All eight documents concern either the electric chair or the execution chamber housing the electric chair. VDOC asserts that these eight documents are exempt from production pursuant to Virginia Code § 2.2-3705.2(6), which provides that certain documents are exempt from production "to the extent such disclosure would jeopardize the security of any governmental facility,

building or structure or the safety of persons using such facility, building or structure." *Id.* The Supreme Court's opinion sets out the standard for a circuit court to apply in reviewing a VDOC claim that a document is exempt under Virginia Code § 2.2-3705.2(6) and remands the matter to this Court "to apply the standard articulated herein to the facts in this record." 776 S.E.2d at 585.

The Court has now completed the task assigned to it by the remand. For the reasons stated in this letter opinion, the Court finds in favor of VDOC with respect to two of the eight documents. With respect to the remaining documents, the Court finds that, even under the deferential standard articulated by the Supreme Court, VDOC has not carried its burden to withhold the documents from production. Therefore, VDOC is ordered promptly to produce the remaining six documents to the petitioner.

*Procedural History*

On June 13, 2014, the petitioner, Scott A. Surovell, wrote VDOC requesting production under VFOIA of documents in 39 categories relating to various aspects of executions conducted in the Commonwealth.

On June 27, 2014, VDOC responded to Mr. Surovell's request. VDOC identified certain documents as responsive to the request and produced them. VDOC identified other documents as responsive to the request and withheld them from production pursuant to a claim of exemption under Virginia Code § 2.2-3705.2(6). The documents that are now at-issue relate to petitioner's Request Numbers 33 and 34.

Request 33 reads as follows:

> Any and all documentation of the specifications related to the electric chair, including but not limited to the voltage, current, connections, and electrodes. To the extent that an exemption is claimed under § 2.2-3705.2(6), please produce redacted documents, or provide a detailed explanation of, and any record supporting, how disclosure of any part of the document "would jeopardize the security of any governmental facility, building, or structure or the safety of person using such facility, building or structure," after sensitive information is redacted. If documents are still withheld in their entirety, detail their contents to the extent possible including the requested voltage, current, connections, and electrodes.

Request 34 reads as follows:

> Any and all documentation related to the installation, set-up, power supply, and control console of the electric chair. To the extent that an exemption is claimed under § 2.2-3705.2(6), please produce redacted documents, or provide a detailed

explanation of, and any records supporting, how disclosure of any part of the document "would jeopardize the security of any governmental facility, building; or structure or the safety of persons using such facility, building or structure," after sensitive information is redacted. If documents are still withheld in their entirety, detail their contents to the extent possible including the requested installation, set-up, power supply, and control console of the electric chair.

VDOC's response to Request 33 and Request 34 was identical and reads as follows:

The Department of Corrections has the following documents that may contain information responsive to this request: (1) manufacturer's installation instructions for the ammeter and voltmeter; (2) AC Current/Voltage Transmitter Instrument Installation; (3) Summary Bill of Material and manufacturer's installation recommendations for the panel board, the dry type transformer, enclosed controls and enclosed circuit breakers; (4) the manufacturer's information packet for a solid state logic automatic transfer switch; (5) the Chamber Electrical Panel schematic; and (6) the Execution Equipment Control Panel schematic/diagram. However, these documents are being withheld in their entirety pursuant to Code of Virginia § 2.2-3705.2(6) which exempts "Engineering and architectural drawings . . . or other records, the disclosure of which would reveal . . . operational . . . plans or protocols, to the extent, that such disclosure would jeopardize the security of any governmental facility; building, or structure or the safety of persons using such facility, building or structure."

The documents referenced in VDOC's answer to Requests 33 and 34 are now labeled as 7a-b and 8a-e (Item 1 is 8a; Item 2 is 8b; Item 3 is 8c and 8d; Item 4 is 8e; Item 5 is 7a; and Item 6 is 7b). Subsequent to filing its response to the petitioner's VFOIA request, VDOC located an additional manual, entitled "Execution Equipment" and apprised the Court and petitioner's counsel of its existence. *See* Footnote 3 to VDOC's "Response and Motion to Dismiss the Verified Petition for a Writ of Mandamus." VDOC asserted that it was also subject to exemption from production pursuant to Virginia Code § 2.2-3705.2(6). This is Document 8f.

On July 31, 2014, the petitioner filed a "Verified Petition for Writ of Mandamus" with the Circuit Court.

On August 21, 2014, VDOC filed a "Response and Motion to Dismiss the Verified Petition for a Writ of Mandamus."

On September 11, 2014, the Honorable Jane Marum Roush, who was the presiding judge in this matter prior to her elevation to the Supreme Court of Virginia, conducted an evidentiary hearing with regard to a number of contested matters, including the issue of whether 7a-b and 8a-f should be disclosed. At the conclusion of the hearing, the Court ruled on each of the withheld documents. With respect to 7a-b and 8a-f, the Court stated the following: "7A and 7B, I'm not finding that the security exemption is well placed, here; I'm going to require disclosure of 7A and 7B, as well as 8A through 8F, the manual, the manufacturers' manuals. I don't think that that is a *bona fide* security concern; I'm going to require disclosure of that." With respect to the other contested matters, the Court ruled that certain documents were properly withheld and other documents should be produced, in whole or in part. Because these other documents are not the subject of this Letter Opinion, they will not be discussed further. VDOC appealed.

On September 17, 2015, the Supreme Court of Virginia reversed and remanded the case to the Circuit Court. The Supreme Court of Virginia's opinion addressed two issues: the Circuit Court's Order to produce certain documents in redacted form, specifically Documents 9a-9f, and the Circuit Court's Order to produce Documents 7a-b and 8a-f. Because the Supreme Court's remand is limited to the latter documents, this Letter Opinion confines itself to that issue.

With respect to Documents 7a, 7b and 8a-f, the Supreme Court stated: "Because we are unable to decipher what weight the circuit court afforded VDOC's expert testimony, we will remand this matter to the circuit court to apply the standard articulated herein to the facts in this record." 776 S.E.2d at 585.

On December 7, 2015, Fairfax Circuit Court Chief Judge Bruce D. White reassigned the matter to this Court due to Justice Roush's elevation to the Supreme Court of Virginia.

On December 11, 2015, this Court wrote counsel for the parties and asked counsel for their positions as to whether the Court needed to conduct a new evidentiary hearing, given the fact that this Court had not presided over the previous evidentiary hearing. Counsel for both parties agreed that the Court did not need to conduct a new evidentiary hearing and could rely on the transcript of the evidentiary hearing. Counsel for the petitioner requested oral argument and also requested access to the documents at issue (7a-b and 8a-f) pursuant to an appropriate protective order. Counsel for VDOC opposed providing petitioner's counsel access to the documents, but advised the Court that, if the Court concluded over VDOC's objections that petitioner's counsel should be given access to the documents prior to oral argument, an appropriate protective order would "largely alleviate" VDOC's concerns.

On January 28, 2016, the Court issued an order which, *inter alia,* stated the following: "The Court has now had an opportunity to read the entirety of the transcript of September 11, 2014, hearing and also to conduct an *in camera* review of the documents in question. The Court finds that it would be helpful to the Court in resolving the matters on remand if counsel for the Plaintiff have access to the documents in question pursuant to an appropriate protective order. This is particularly the case with reference to the documents identified as 8(f)."

On February 8, 2016, counsel for the parties entered into an agreed-upon protective order and petitioner's counsel were permitted to review the documents at issue.

On February 25, 2016, the Court heard oral argument with regard to the issues on remand. At the conclusion of the hearing, the Court took the matter under advisement and indicated it would issue a letter opinion and accompanying order.

*The Legal Standard Governing the Court's Review*

At issue in this case is VDOC's assertion that Virginia Code § 2.2-3705.2(6) excludes from disclosure all eight documents at issue. In its entirety, Virginia Code § 2.2-3705.2(6) reads as follows:

> The following records are excluded from the provisions of this chapter but may be disclosed by the custodian in his discretion, except where such disclosure is prohibited by law . . . .
> 6. Engineering and architectural drawings, operational, procedural, tactical planning or training manuals, or staff meeting minutes or other records, the disclosure of which would reveal surveillance techniques, personnel deployments, alarm or security systems or technologies, or operational and transportation plans or protocols, to the extent such disclosure would jeopardize the security of any governmental facility, building or structure or the safety of persons using such facility, building, or structure.

*Id.*

Thus, there are three separate provisions in Exemption 6 that VDOC must satisfy in order properly to withhold production of particular records: First, the records in question must constitute "[e]ngineering and architectural drawings, operational, procedural, tactical planning or training manuals, or staff meeting minutes or other records." *Id.* Second, the disclosure of the records must "reveal surveillance techniques, personnel deployments, alarm or security systems or technologies, or operational and transportation plans or protocols." *Id.* Third, the disclosure of the records must "jeopardize

the security of any governmental facility, building or structure or the safety of persons using such facility, building or structure." *Id.*

There is no question that all eight of the records fit the first criteria, since that criteria includes the all-encompassing term "other records." With respect to the second criteria, the Court concludes that several of the records do not satisfy this requirement. This is discussed later in this opinion.

It should be noted here that, at oral argument on February 25, 2016, VDOC argued that the petitioner has waived the right to assert that certain documents did not meet the second criteria. Specifically, VDOC argued that the failure to raise this assertion on appeal constitutes a waiver. The Court disagrees, for two reasons.

First, the Supreme Court stated in its opinion that, as a general matter, a "circuit court must make a *de novo* determination of the propriety of withholding the documents at issue . . . ." and goes on to state that "[b]ecause we are unable to decipher what weight the circuit court afforded VDOC's expert testimony, we will remand this matter to the circuit court to apply the standard articulated herein to the facts in this record." 776 S.E.2d at 585. This Court reads this language to require it to consider the propriety of an Exemption 6 assertion in all its particulars, and not to limit itself only to the applicability of the third criteria.

Second, it was not until the instant proceedings following the remand that petitioner's counsel were given access to the documents in question. It would be fundamentally unfair to preclude petitioner's counsel from making an argument they were not in a position to make prior to gaining access to the documents. While this Court does not doubt that VDOC and its counsel have acted throughout this proceeding in good faith, including in their efforts to accurately describe the documents in question, that does not mean that petitioner's counsel could not reach a different judgment regarding the nature of the documents after conducting their own review. Therefore, the Court concludes that petitioner's counsel's right to raise this argument has not been waived.

With respect to the third criteria, the Supreme Court has given this Court clear guidance with respect to two critical issues: First, what is the definition of "would jeopardize the security of any governmental facility, building or structure or the safety of persons using such facility, building or structure," as that phrase is used in Section 6? Second, how much weight should be given to VDOC's security assessments?

With respect to the first issue, the Supreme Court's opinion makes clear that VDOC is not required to prove that release of records would actually cause a security breach or harm to persons. "To the extent that releasing documents would expose a governmental facility to danger, the standard is met. VDOC need not 'prove conclusively that, if it responded, some [facility's security] would in fact be compromised or jeopardized.'" *Id.* at 584 (quoting *Gardels v. Central Intelligence Agency,* 689 F.2d 1100, 1106,

223 U.S. App. D.C. 88 (D.C. Cir. 1982)). The Supreme Court of Virginia further stated:

> A circuit court must take into account that any agency statement of threatened harm to security will always be speculative to some extent, in the sense that it describes a potential future harm rather than an actual harm. The question placed before the court is only whether the potential danger is a reasonable expectation.

*Id.*

With respect to the second issue, the Supreme Court's opinion states that "[w]e give deference to the expert opinions of correctional officials charged with maintaining the safety and security of their employees, the inmates, and the public at large." *Id.* at 585. The Supreme Court cites with approval this excerpt from *Mithrandir v. Department of Corrections,* 164 Mich. App. 143, 416 N.W.2d 352, 354 (Mich. Ct. App. 1987):

> [A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators. As can be seen from these principles, the Department of Corrections has obligations with regard to prison security and the confinement of prisoners which are separate and distinct from its duty under the FOIA to provide a reasonable opportunity for persons to inspect its nonexempt public records.

*Id.* (citations omitted).

The Supreme Court also cites with approval this excerpt from *Gardels, supra:* "'The test is not whether the court personally agrees in full with the [agency's] evaluation of the danger — rather, the issue is whether on the whole record the [a]gency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility in this field' of prison security." *Surovell,* 776 S.E.2d at 585 (quoting *Gardels,* 689 F.2d at 1105).

See also this excerpt from *Halperin v. Central Intelligence Agency,* 629 F.2d 144, 203 U.S. App. D.C. 110 (D.C. Cir. 1980), which is one of the national security cases cited by the Supreme Court, in the instant case:

> In past cases this court has interpreted the proper means of applying the "substantial weight" standard . . . . We have held that summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called

into question by contradictory evidence in the record or by evidence of agency bad faith.

*Id.* at 147-48. See also *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 30, 334 U.S. App. D.C. 20 (D.C. Cir. 1998) ("Among the reasons that a declaration might be insufficient are lack of detail and specificity, bad faith, and failure to account for contrary record evidence"). However, while "[d]eference is not equivalent to acquiescence," *id.* "[i]f the agency's declarations 'are neither contradicted by other record evidence nor contaminated by indications of bad faith, the reviewing court should not ordinarily second-guess the agency's judgment.'" *Fischer v. United States Dep't of Justice*, 723 F. Supp. 2d 104, 112 (D.C. 2010) (quoting *ACLU v. United States Dep't of Justice*, 265 F. Supp. 2d 20, 27 (D.C. 2003)).

Consequently, the Supreme Court held as follows:

> We adopt the approach expressed by these courts and hold that the circuit court must make a *de novo* determination of the propriety of withholding the documents at issue, but in doing so, the circuit court must accord "substantial weight" to VDOC's determinations.

*Id.* (citations omitted). "Once satisfied that proper procedures have been followed and that the information logically falls within the exemption clause, courts need go no further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith." *Id.* at 585 (citing *Gardels*, 689 F.2d at 1105).

### Description of the Documents at Issue

Document 7a is described in VDOC's response to Request 33 and Request 34 as "the Chamber Electrical Panel schematic." According to a VDOC witness,[1] it is a "complete schematic" of the execution chamber. Transcript of Hearing at 30, *Surovell v. Dep't of Corrections* (Fairfax Co. Cir. Ct. Sept. 11, 2014). It is further described by the witness as "the floor plan of the execution chamber, [and] also provides information on all the electrical connections between equipment, where the stop switches are, where the fire alarms are, all of it." *Id.* at 29. This includes, according to the witness, the wiring of the electric chair itself as well as all of the electricity within the execution chamber. *Id.* It contains "significant" detail and someone examining the document "would know where all the entrances and exits are . . . ." *Id.* at 30. The Court's *in camera* review of the document

---

[1] At the evidentiary hearing, VDOC called three witnesses: Michele Sanford Howell, Legal Issue Coordinator for VDOC; Dean Ricks, Chief of Professional Services for VDOC; and Arnold David Robinson, Chief of Corrections Operations for VDOC.

also indicates that the document contains a diagram showing the location of the execution facility in relationship to other buildings and a guard tower.

Document 7b is described in VDOC's response to Request 33 and Request 34 as "the Execution Equipment Control Panel schematic/ diagram." The Court's *in camera* review of the document indicates that the title "Execution Equipment Control Panel" appears at the top of the document. A VDOC witness described the document as a schematic of the electrical panel in the execution chamber, which shows all the connections and how they come in and where they go out. *Id.*

Document 8a-8f were described generally by a VDOC witness as the "manufacturers' installation instructions" for the electric chair. "It's highly detailed information about the equipment, how it would be installed, what's deemed necessary to maintain it." *Id.* at 31. According to the VDOC witness, the documents contain specifications, diagrams, schematics, layouts and "a lot" of details, and showed how the electric chair was put together, maintained and operated. *Id.* at 30-31. The documents are further described as follows. Document 8a is described in VDOC's response to Request 33 and request 34 as "the manufacturer's installation instructions for the ammeter and voltmeter." Document 8b is described in VDOC's response to Request 33 and Request 34 as "AC Current/Voltage Transmitter Instrument Installation." Document 8c and Document 8d are described in VDOC's response to Request 33 and Request 34 as "Summary Bill of Material and manufacturer's installation recommendations for the panel hoard, the dry type transformer, enclosed controls and enclosed circuit breakers." Document 8e is described in VDOC's response to Request 33 and Request 34 as "the manufacturer's information packet for a solid state logic automatic transfer switch." Document 8f is a document entitled "Execution Equipment" and consists of several pages. The first two pages are entitled "Execution Equipment" and contains a test procedure. The third page is entitled "Execution Procedure." The fourth page is a brief letter from the manufacturer of the execution equipment.

### VDOC's General Security Concerns

VDOC's Chief of Corrections Operations, Arnold Robinson, qualified as an expert in the field of corrections operations, and was the principal witness to testify regarding VDOC'S security concerns.

Mr. Robinson testified to security concerns with regard to both internal and external threats to the prison. He referenced seven specific incidents: A hostage situation in 1996 at the Nottoway Correctional Center, *id.* at 88; a murder at the Red Onion facility, *id.;* an escape from death row in 1983 or 1984 when six inmates escaped, *id.* at 95-96; in connection with one execution, a riot broke out in an effort to prevent an execution, resulting in many staff members getting hurt, some seriously, in the late 70's or 80's, *id.* at 103; with respect to the Muhammad execution, VDOC

had credible information that he was actually plotting an escape during the process of being moved from point A to point B, requiring VDOC to take precautionary measures to disrupt his plans, *id.* at 104; with respect to another execution involving a gang affiliate, there was information that there could be gang interference with the execution and a possible attempt to free the prisoner, VDOC used an armored vehicle to move the individual, *id.;* and a witness who was believed to be anti-death penalty decided not to witness an execution, thereby creating a potential situation where there would not be sufficient witnesses, *id.* at 112-113.

Mr. Robinson also expressed certain general security concerns. "There's always the issue of moving individuals from Point A to Point B." *Id.* at 99. When an execution is imminent, members of the public come to the institution, citizens against the death penalty, advocates for the death penalty, and the news media. *Id.* On the day of an execution, there's always concern about a riot "to actually disrupt and prevent the execution from occurring." *Id.* at 103. "[E]xternally, there's always threats involved prior to and on the night of the execution." *Id.* at 100. It is "not unusual" for the prison to receive threats toward staff on the night of an execution. *Id.* at 105.

### *VDOC's Concerns with Respect to the Documents at Issue*

With respect to the documents at issue, two VDOC witnesses expressed security concerns. Ms. Howell testified that "if you wanted to interrupt the process [of an execution] at any point, you certainly could, if you knew how the electric chair had been installed, where the lines ran out, because the power comes in from the outside, so I believe that's how." *Id.* at 32. She indicated that she would have to "speculate" on the specific means to interrupt an execution but added that "folks that are very passionate about it could, possibly stop — could cause things outside of the building that would interrupt the process." Mr. Ricks, who signed the original response to the petitioner's VFOIA request, testified that he consulted with Harold W. Clarke, Director of VDOC, and Mr. Robinson, before making his response to the petitioner. *Id.* at 73. He indicated that the final decision with regard to the withholding of records was made by Mr. Clarke. *Id.* at 74. When asked specifically as to how possession of Document 7a and Document 7b would assist someone in interrupting or disrupting an electrocution, he said it would be "conjecture" on his part. *Id.* at 77.

Mr. Robinson was VDOC's expert witness on security concerns. He made the following points with regard to the particular documents at issue.

"I have, security concerns related to the electrical wiring and the components related to the electric chair in that those components and those manuals are actually the method and the processes that we use to carry out a court order of execution and that every component involved in that would be — in some way, someone could — nobody planned for the death row

escape. So you cannot take any chances that someone could not plan and do something to the system that could prevent an electrocution and/or through lethal injection." *Id.* at 118.

With regard to Document 7a: "[I]t identifies the security components of that building, that secure it and that maintain the offender in that building, along with the layout of all the wiring to the electric chair." *Id.* at 128.

With regard to Document 7b: "[I]f individuals knew that, or the offenders knew that, that it would offer the opportunity for someone to plan to stop an execution, which could result in harm to staff." "It gives you the opportunity and the avenue to establish plans. If you do not know where they are, they can't establish plans." *Id.* at 128-29.

With regard to Documents 8a-f, Mr. Robinson acknowledged that he had not actually looked at them; but stated that he had "some familiarity" with them. *Id.* at 129. He generally described them as "documents that provide the details of how the systems work." *Id.* at 129. When asked to express his specific security concerns with respect to these documents, he stated the following: "The electric chair design in Virginia, after it was moved from the State Penitentiary, involved individuals that had that knowledge to design and install the requirements of — that's needed to create the execution, and these documents are not documents that you would bring off the shelf; they're proprietary in some nature, they're specific to one electric chair. I'm not convinced that every electric chair in the country uses the same process that Virginia designed. So they're specific to how that occurs, and individuals who know that could plan to attack the system, the building, in a specific area that could stop the execution and the court order from being carried-out." *Id.* at 130-31.

*Discussion*

A. *Has VDOC Carried Its Burden of Establishing the First Two Criteria of Exemption 6?*

As stated above, before the Court even reaches the security issue, it must first determine whether the documents at issue even fit within Exemption 6. In other words, are these "[e]ngineering and architectural drawings, operational, procedural, tactical planning or training manuals, or staff meeting minutes or other records, the disclosure of which would reveal surveillance techniques, personnel deployments, alarm or security systems or technologies, or operational and transportation plans or protocol . . .?" Va. Code § 2.2-3705.2(6).

The Court finds that just three of the documents fit this criteria. Document 7a and Document 7b — the electrical schematics for the execution chamber, the electric chair and the control panel — constitute "engineering and architectural drawings" and their disclosure "would reveal" the means by

which the electrical systems operate in the execution chamber. While this does give the term "operational . . . plans" a broad interpretation, the Court finds that the documents meet the criteria of the exemption. Similarly, Document 8f is an "operational", record whose disclosure "would reveal" the "operational . . . plans" for the electric chair.

In contrast, Documents 8a-e, while they are "other records" and therefore meet the first criteria listed in the exemption, do not meet the second criteria, *i.e.,* their disclosure would not reveal "surveillance techniques, personnel deployments, alarm or security systems or technologies, or operational and transportation plans or protocols . . . ." At oral argument on February 25, 2016, VDOC argued that the word "technologies" stands alone and covers any technology. The Court disagrees. The word "technologies" — like the word "systems" — modifies the phrase "alarm or security." In other words, Exemption 6 covers systems and technologies related to alarms or security. If the word "technologies" stands alone, that would give Exemption 6 essentially unlimited scope. Documents 8a-e are components in the electric chair; they do not fit any of the Exemption 6 criteria.

Therefore, for this reason alone, the Court finds that VDOC has not carried its burden with respect to its decision to withhold Documents 8a-e on Exemption 6 grounds. Nevertheless, the Court will reach and rule upon the question of whether VDOC has met its burden with respect to its security concerns as to Documents 8a-e.

B. *Has VDOC Carried Its Burden of Establishing That Release of the Documents Would Expose a Government Facility to Danger? In Other Words, Is Potential Danger a Reasonable Expectation?*

The Supreme Court of Virginia has instructed this Court to give "substantial weight" to the expert judgment of VDOC. As stated above, the *Gardels* case, cited with approval in the remand opinion, makes clear that the test is not whether this Court "personally agrees" with VDOC's assessment of danger; rather, the issue is whether "on the whole record the [a]gency's judgment survives the test of reasonableness, good faith, specificity, and plausibility" in the field of prison security. 689 F.2d at 1105. In the absence of indications of bad faith, the question the Court must resolve is whether "the information logically falls within the exemption clause." *Surovell,* 776 S.E.2d at 585.

With respect to Documents 7a and 7b, the Court finds that VDOC has carried its burden. These documents describe the flow of electricity in and out of the execution chamber. VDOC's security concerns were expressed with specificity: an ·individual in possession of these schematics could disrupt the flow of electricity, and thereby interfere with an execution. While VDOC's witnesses could not say exactly how that could be accomplished, neither Exemption 6, nor the Supreme Court's interpretation of the "would jeopardize" language, requires that they do so.

With respect to Documents 8a-e and Document 8f, however, the Court finds that VDOC has not carried its burden, even when the Court gives "substantial weight" to its expert opinion. This is for multiple reasons.

First, VDOC's sole expert witness acknowledges that he did not look at Documents 8a-f but only had "some familiarity" with them, even under a deferential standard, this Court can certainly consider the fact that the expert witness has not actually looked at the documents in question.

Second, while VDOC's expert testified to several specific incidents in the past and his general security concerns, there was never any linkage between these expressed Concerns and Documents 8a-e and Document 8f. The seven security incidents referenced by Mr. Robinson — which included a hostage situation, a death row escape, a riot, and a witness who might have tried to thwart an execution by absenting himself from the viewing room — each support the conclusion that prisons present extreme security concerns, especially around the time of executions. But that does not mean, a fortiori, that documents that describe certain components of the electric chair (Documents 8a-e) or documents that describe the procedure for execution (Document 8f) can automatically be withheld pursuant to Exemption 6. VDOC had the burden of establishing how possession of these documents would create a "reasonable expectation" of "potential danger." The Court finds that it did not do so. In contrast, with respect to Documents 7a and 7b, VDOC makes the assertion that in some way, albeit unknown, an individual in possession of the documents could attempt to thwart an execution by interfering with the flow of electricity. Rather, VDOC's expert could only say that Documents 8a-f "are the documents that provide the details of how the systems work," and that individuals in possession of these documents "could plan to attack the system, the building, in a specific area that could stop the execution and the court order from being carried out." These are the types of "merely conclusory statements" that the D.C. Circuit referenced as inadequate in *Halperin,* which was one of the cases cited by the Supreme Court of Virginia in its remand opinion.

To be clear, this Court is not suggesting that VDOC must state precisely or in detail how disclosure of these records would create a "reasonable expectation" of "potential danger." As the Supreme Court stated, "any agency statement of threatened harm to security will always be speculative to some extent . . . ." *Surovell,* 776 S.E.2d at 584. But here, as to Documents 8a-f, there is not even a speculative claim as to how disclosure of these records would create a "reasonable expectation" of "potential danger." Thus, the Court concludes that VDOC has not carried its burden of establishing that "the information logically falls within the exemption clause."

Finally, with respect specifically to Document 8f — which consists principally of the test protocol and the execution protocol for the electric chair — it should also be noted that the electric chair execution protocol has to some extent previously been described and disclosed by VDOC.

*See* Attachment XII to VDOC's June 27, 2014, letter to petitioner, entitled "History of Executions in Virginia."

"The electric chair itself is simply a homemade oak armchair with leather straps attached. It is the same chair that was used at the Penitentiary in Richmond. The modern electrical control mechanism was installed when the existing chair was relocated from the old Penitentiary in Richmond to Greenville Correctional Center in May of 1991. The equipment is designed to deliver electricity in two applications, each lasting one and a half minutes, for a total application of three minutes. There is a slight pause between the two applications. Five minutes after the conclusion of the second electrical application, the attending physician may certify that death has occurred." (Appellate Record at 620-21.)

*See* also the testimony of attorney Jon Sheldon, who described in detail his witnessing of an electrocution. Transcript of Hearing at 190-212, *Surovell v. Dep't of Corrections* (Fairfax Co. Cir. Ct. Sept. 11, 2014).

For the foregoing reasons, the Court finds that VDOC has not carried its burden with respect to its decision to withhold Documents 8a-f pursuant to Exemption 6. Therefore, VDOC is ordered to provide to petitioner Documents 8a-f. (As stated above, the Court also finds that Documents 8a-e do not meet the second criteria of Exemption 6, which constitutes an independent ground to order production.) With respect to Documents 7a-b, the Court finds that VDOC has carried its burden to withhold the documents pursuant to Exemption 6.